UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA DICKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:03CV1798 CDP |
| | ) | |
| A.B. HOLDING COMPANY | ) | |
| d/b/a ANHEUSER-BUSCH | ) | |
| COMPANIES, INC., and | ) | |
| AETNA LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Rhonda Dickson brings this ERISA action seeking benefits under her late husband's life insurance policy. The benefits were paid to the decedent's daughter from his first marriage, who was listed as his beneficiary. Plaintiff claims that her husband had changed his life insurance beneficiary designation to her, but his employer had no record of any change. Having heard the parties' evidence and reviewed the administrative record, I conclude that defendant Aetna, the insurer and plan fiduciary, did not abuse its discretion in paying the benefits to the daughter. I also conclude that A.B. Holding, the employer and plan administrator, did not breach any ERISA duties to plaintiff. Aetna reviewed and considered the competing claims, sought the appropriate information from Anheuser-Busch, based its decision

on the information available to it and the Plan language, and did not labor under a conflict of interest or commit any procedural irregularities. Anheuser-Busch provided all documents to plaintiff that were required under the law. I will therefore enter judgment on behalf of both defendants on all of plaintiff's claims.

## A. <u>Findings of Fact</u>

Raymond Dickson died on November 13, 2002. Rhonda Dickson married Raymond Dickson in 1996, and they had two sons, who are still minors. Raymond had an adult daughter, Juliana Dickson Garwood, from his first marriage. He had been an employee of Anheuser-Busch from 1975 until some time in late summer or early fall of 1999. He retired under pressure, having been told that he would be fired for some type of error unless he took retirement.

In September of 1999 Raymond and Rhonda went to Anheuser-Busch to check on his retirement benefits. At that time he signed a number of documents, including various pension election forms and health insurance continuation forms. He also signed an "IRA Simplifier" form that listed Rhonda as his primary beneficiary for his retirement funds. He listed as contingent beneficiaries Kenneth Borroum (listed on the form as "son," but actually Rhonda's son from a prior relationship) and Raymond and Anthony Dickson, his sons by Rhonda. The Dicksons left the office with a copy of all the pension, IRA, and health insurance

forms that they had signed. Rhonda Dickson testified at trial that they also filled out a similar form to designate the same beneficiaries for Raymond's group life insurance policy, but they were not given copies of that form. She testified that the Anheuser-Busch representative, Debbie Snider, said the forms would be sent later. Shortly after this meeting the Dicksons received a "Benefits Confirmation Sheet." This form listed under "Your Benefits" medical coverage for employee and family, and basic life coverage in the amount of $40,000. It listed as "Dependents" Rhonda, Raymon, and Anthony. The form did not say anything about beneficiaries.

In 1984 Raymond had signed a life insurance beneficiary designation listing his parents (who were deceased by the time of his death) and his daughter Juliana as beneficiaries under the Anheuser-Busch employee group life insurance plan that was then in existence. At the time of Raymond's death, this was the only beneficiary designation form that Anheuser-Busch had on file. It had no record of any change from 1999, as Rhonda claims.

In January of 2003, after Raymond died, both Rhonda and Juliana made claims for the proceeds of the life insurance policy. Anheuser-Busch provided the information it had on file to Aetna, the insurer and plan fiduciary. Aetna's claims office investigated the competing claims, asking Anheuser-Busch to check its records and provide any information that it had on file. On February 4, 2003, Aetna

notified both claimants that it had determined that Juliana should receive the benefit funds, but that they would not be paid until Rhonda's time to challenge the determination had expired. It notified Rhonda of her right to appeal the decision in sixty days, and told her that she could submit additional documentation to support any appeal. Rhonda, through counsel, made several requests for additional information and stated that Rhonda continued to believe she should receive the funds, but did not produce any additional information. When the sixty-day period expired, Aetna paid the proceeds to Juliana.

Rhonda's counsel sent several letters to Anheuser-Busch and to Aetna, both before and after the determination.[1] He asked for all documentation that was being relied upon for the adverse determination, and repeatedly asked for a copy of the policy. Aetna referred him to Anheuser-Busch for a copy of the policy. Anheuser-Busch eventually sent him the summary plan description, but did not supply the policy. In fact, no actual written policy existed until October of 2003, some months after Raymond's death. This Aetna policy had an effective date of January 1, 2002, and replaced the previous group policy that had covered Anheuser-Busch

---

[1] These letters contained some mistakes, including stating that Raymond was aware of his impending death in September 1999 when he went to the office (at trial Rhonda verified that this was a mistake, and that Raymond had been in good health in September 1999), and that he had received confirmation of the beneficiary change (this was an apparent reference to the "Benefits Confirmation Sheet," which, as stated above, does not mention beneficiaries).

employees. That prior policy was issued by General American Life Insurance Company. While the summary plan description that A-B provided to plaintiff referred to General American as the Claims Administrator, it correctly described the life insurance benefits that covered Raymond. The evidence before me showed that Aetna had standard policy language that applied to all group employee plans such as this, and that although Anheuser-Busch negotiated some changes from the standard language and those changes were included in the policy that was ultimately issued, none of those changes had any effect on Raymond Dickson's coverage and claim.

The Aetna policy provides that it replaces all prior coverage sponsored by the employer, and that "the beneficiary you named under a prior Aetna life insurance plan will apply to this Plan." An Aetna employee testified at trial that it was standard practice at Aetna and in the industry to accept employee beneficiary designations that were made under prior employer-sponsored policies issued by other insurance companies, and that employees were not required to sign new beneficiary designation cards when Aetna took over the insurance coverage from the prior insurer.

### B. Conclusions of Law

Plaintiff's complaint purports to bring three counts under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., although the claims

overlap and the complaint is vague about which counts apply to which defendant. Count I seeks benefits under 29 U.S.C. § 1132(a)(1)(B); Count II claims failure to provide requested ERISA documents under 29 U.S.C. 1022(a) and 1024(b)(4); and Count III claims breach of fiduciary duties.

### 1. **Claim for Benefits**

The civil enforcement provisions of ERISA allow suit by "a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of his plan...." 29 U.S.C. § 1132(a)(1)(B). Usually, an employee benefit plan itself is held liable for any benefits that are payable under the terms of the plan. Ross v. Rail Car America Group Disability Income Plan, 285 F.3d 735, 740-41 (8th Cir. 2002). An employer is not the proper party defendant in claims brought pursuant to ERISA, unless the employer controls administration of the plan. Layes v. Mead Corporation, 132 F.3d 1246, 1249-50 (8th Cir. 1998).

ERISA defines a fiduciary as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management, or disposition of its assets... or who has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). It is well settled that a fiduciary, as

defined by ERISA "is not an all or nothing concept...[A] court must ask whether a person is a fiduciary with respect to the particular activity in question." Kerns v. Benefit Trust Life Insurance Company, 992 F.2d 214, 216 (8th Cir. 1993) (quoting Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992)).

Under the undisputed evidence, Anheuser-Busch is the plan administrator but Aetna is the claims administrator and is a fiduciary with complete discretionary authority to determine all claims for benefits and to review denials of claims. The Policy grants Aetna discretionary authority to determine "... whether and to what extent... beneficiaries are entitled to benefits..." The terms of the Policy also grants Aetna the power to construe any disputed terms within the policy. The Policy provides as follows:

> For the purpose of section 503 of Title 1 of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary with ***complete authority to review all denied claims for benefits*** under this policy. In exercising such fiduciary responsibility, ***Aetna shall have discretionary authority to:***
>
> > determine whether and to what extent employees and beneficiaries are entitled to benefits; and
> >
> > construe any disputed or doubtful terms of this policy.
>
> Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously.
>
> When a fiduciary is vested with discretionary authority to determine a

claimant's eligibility for benefits, the decision to deny benefits is normally determined under the abuse of discretion standard.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  A less deferential standard may be applied, however, where there is a palpable conflict of interest or a serious procedural irregularity which caused a serious breach of fiduciary duty.  See Torres v. UNUM Life Ins. Co., 405 F.3d 670 (8th Cir. 2005).  Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998), established a "sliding scale approach" whereby the court can apply a less deferential standard depending on the nature and seriousness of the conflict or the procedural irregularity.

To obtain a less deferential standard of review, a plaintiff must present evidence that: "(1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty..."  Woo, 144 F.3d at 1160.  In Woo, the court found that the administrator, an insurance company, had a financial conflict of interest because it received a direct financial benefit by denying a claim.  In addition, the court found that the administrator's failure to conduct an independent medical review of an uncommon claim was evidence that the administrator did not exercise proper judgment "or thoroughly investigate the claim."  Id.

Plaintiff has failed to show a conflict of interest in this case.  While a conflict

of interest may exist where one entity is both the insurer and the fiduciary with discretion to pay claims, this is not necessarily so. See Torres 405 F.3d at 679-680. Here Aetna's decision to pay Juliana instead of Rhonda did not provide any financial benefit to it – it paid the full amount of the benefits it owed, and it gained nothing (except a lawsuit) by denying Rhonda's claim. Thus, there is no evidence of a financial conflict of interest.

Plaintiff also failed to show any serious procedural irregularity. Her argument for this irregularity is that Anheuser-Busch, the administrator, failed to provide documentation, including the policy itself. She argues that since the policy did not even exist in writing at the time the claim was denied, a procedural irregularity must have existed. Anheuser-Busch's failure to provide documents cannot be attributed to Aetna, however, and it was Aetna who denied the claim.[2] Additionally, as discussed below, Anheuser-Busch did not violate any duties it owed to Rhonda, since she was not a beneficiary under the plan. Although the lack of a written policy for more than a year appears unusual, I cannot say that it caused a serious

---

[2]Plaintiff appears to argue that Anheuser-Busch was really calling the shots, since it had several communications with Aetna about the case, and in one it directed that Aetna not provide any information to Rhonda. This does not show that Aetna did not make the decision. Indeed, other evidence suggests that at one point Anheuser-Busch discussed with Aetna whether an interpleader action should be filed, and Aetna determined that this was not appropriate because the evidence clearly showed that Juliana was the beneficiary. This, along with the other evidence in the case, shows that it was Aetna who decided the issue, and therefore A-B's actions (or inactions) regarding documents cannot be attributed to Aetna.

procedural irregularity.  All parties agree that the policy reasons given to Rhonda for the denial were reasons that are supported by the policy, and that the summary plan description correctly described the actual policy.  The "standard language" that Aetna applied to this claim was entirely consistent with the language of the policy that was ultimately produced.  The lack of a written policy had no effect on the decision in the case.

To the extent that plaintiff may be attempting to claim that Aetna committed a serious procedural irregularity by not performing a sufficient investigation, the evidence does not support this argument.  The parties agree that when the Dicksons went to Anheuser-Busch on September 19, 1999, they met with Debbie Snider.  As set out above, Rhonda claims that Debbie Snider said she would send confirming documents.  Debbie Snider was one of the Anheuser-Busch people that Aetna dealt with on this claim, and she informed Aetna that there was no record of any change of beneficiary, even though Rhonda was claiming that there should be.  Thus, in making its decision Aetna conducted all the investigation that was necessary, conferred with the people involved, and considered all the available evidence.  It was not required to individually interview Rhonda, as her position was made very clear by her numerous communications through her lawyer.

For these reasons I conclude that the abuse of discretion standard should

apply. Under this standard, it is clear that Aetna did not abuse its discretion. It received Rhonda's claim and considered it, along with the competing evidence it received on the only written beneficiary designation of record. It was entitled to disbelieve Rhonda's claim that the beneficiary had been changed because she could present no documentary proof of the facts she alleged. Although she told them she had received confirmation of the change, the document she referred to was the Benefits Confirmation Sheet, which did not show a change in beneficiary. Aetna made inquiries of Anheuser-Busch and sought all documentation that could be relevant. After its initial denial, it again told Rhonda that she had an opportunity to appeal and provide further proof. Rhonda did not do so, and Aetna did not abuse its discretion in paying Juliana the benefits.

Plaintiff also argues that the Aetna plan in fact required that she be the beneficiary. The reasoning is this: the Aetna policy said Aetna would recognize a beneficiary designation from a prior Aetna policy. Since the prior Anheuser-Busch policy here was provided by General American Life, plaintiff reasons, Aetna should not have recognized the 1984 beneficiary designation and instead should have substituted the current wife. This theory is not supported by the language of the policy or the general practice in the industry. Employee group life plans do not generally require all employees to file new beneficiary designations just because the

employer changes insurance companies.  Nothing in this policy so provided, and plaintiff's interpretation is simply incorrect.

Even were I to conclude that for some reason the de novo standard applied, I would still find that the decision to pay Juliana was correct.  Rhonda's arguments do not make sense when considered in light of the documentary evidence, and she was not a credible witness.  She admits that on September 19 she and Raymond left A-B with all documents they had signed save the one crucial to the decision here.  She admits that her husband later took out another life insurance policy that did name her and the sons as beneficiaries, although this policy ultimately did not pay.  (She admits that she knew her husband's application for it was fraudulent).  She admits that she blames Anheuser-Busch for her husband's death, because, she says, "they robbed him of his manhood" by forcing him to retire.  She blames A-B for the loss of her house, although she had worked before her husband's death but has not returned to work since.  She gave contradictory testimony at her deposition and at trial regarding whether she was able to work or had looked for work.  Her demeanor was also not credible:  she was hostile and gave what sounded like pre-prepared answers no matter what the question was.  While these demeanor issues are not hugely significant by themselves, when they are considered in light of her contradictory and illogical testimony on key points, they certainly hurt her

credibility. Aetna's decision to pay the benefits to Juliana was not only not an abuse of discretion, I believe it was the correct decision. I will therefore enter judgment for defendants on the claim for benefits.

### 2. Claim for failure to provide documents

Count II alleges a claim pursuant to 29 U.S.C. § 1132(a)(1), stating: "Defendant A.B. Holding failed to provide the requested ERISA documents as required by 29 U.S.C. Sec. 1132, and ERISA Act Sec. 502 entitles the Plaintiff to recover from Defendant A.B. Holding a penalty of up to $110.00 per day..."

As set out above, Rhonda Dickson, through her attorney, requested plan documents from both Aetna and Anheuser-Busch on numerous occasions. She was sent the Summary Plan Description, but she did not receive a copy of the policy itself until after suit was filed. Anheuser-Busch told her that the policy itself was not available, which was true, since the written policy did not exist until October 16, 2003.

To the extent plaintiff attempts to bring this claim against Aetna, I agree with both defendants that Aetna has no liability, as it was not the plan administrator. Plaintiff has presented no evidence or even any serious arguments that Aetna is liable under this count. The Plan identifies A.B. Holding as the plan administrator. Defendant A.B. holding acknowledges its role as plan administrator.

ERISA authorizes a remedy to plaintiffs who do not receive documents requested from plan administrators under 29 U.S.C. § 1132(a)(1)(A). Courts are not required to grant plaintiff the requested penalty. The plaintiff must provide evidence to show that the Court should exercise its discretion to order a penalty. Wasielewski v. Kiberg Roofing, Inc. 821 F.Supp. 1303, 1305 (E.D. Mo 1993)("Untimeliness alone, however, does not warrant such a result").

There is no evidence of bad faith here or that there was any prejudice suffered by Rhonda by A-B's failure to provide the documents. See Meredith v. Alltel, Inc., 11 F.3d 1354, 1360 (7th Cir. 1993). To the extent plaintiff claims that she could not properly perfect her appeal without the plan documents, she is incorrect. The denial letter she received from Aetna told her the deadline for appealing and told her that she needed to submit proof of her claim to be the beneficiary. Her inability to do this had nothing to do with the language of the plan, and was not caused by her not receiving the documents. In the absence of any bad faith or prejudice, I would exercise my discretion not to award damages, even were plaintiff considered a participant or beneficiary under the policy.

However, because plaintiff was not a beneficiary, the plan administrator was not obligated to provide her with documents in any event. See Combs v. Koch Industries, Inc., 785 F. Supp. 1374, 1377 (E.D. Mo. 1992). Rhonda Dickson was

not a beneficiary under the plan. Therefore A.B. Holding was never obligated to send plan documents to her. She cannot be entitled to statutory penalties.

### 3. Breach of Fiduciary Duty

Count III claims that Aetna breached its fiduciary duties to plaintiff. This claim is probably intended to be a claim for benefits, but in any event, it fails. As stated above, it is undisputed that Aetna was a fiduciary under the plan. Dickson's claims in this count are that Aetna breached its "fiduciary duty to properly administer the Plan in accordance with ERISA laws and regulation," that Aetna failed to act for the "exclusive purpose of providing benefits to the participants and beneficiaries of the Plan," and that Aetna "failed to administer the Plan in accordance with its governing documents and instruments."

ERISA sets forth a "comprehensive civil enforcement scheme" and Congress did not intend to authorize any remedies that are not incorporated expressly within the statute. Pilot Life Insurance v. Dedeaux, 481 U.S. 41, 54 (1987). Thus, 29 U.S.C. § 1132(a) represents the only cause of action available to a plaintiff seeking benefits. Pilot, 481 U.S. at 54; Slice v. Sons of Norway, 34 F.3d 630, 633 (8th Cir. 1994). To the extent plaintiff seeks benefits, her claim fails for the reasons set out above. To the extent she seeks something else, her claims fail because there was no breach of fiduciary duty. As in Barnhart v. UNUM Life Insurance Co. of America,

179 F.3d 583, 589 (8th Cir. 1999), plaintiff fails to appreciate that Aetna's "fiduciary obligations extend to everyone who is covered by the policy.... A company failing to conduct proper inquiries into claims for benefits breaches its duty to all claimants as a fiduciary of the benefit funds when it grants claims to unqualified claimants." Had Aetna paid benefits to a person other than the one listed on the only beneficiary designation form it had, it would have breached its fiduciary duties to the plan by not following its express terms. Plaintiff has shown no right to recover on Count III.

### C. Conclusion

Plaintiff has failed to prove any of her claims for relief. The evidence before me shows that Aetna and Anheuser-Busch complied fully with all provisions of ERISA and are not liable to Rhonda Dickson. Rhonda was not the beneficiary under the life insurance policy. Both defendants appropriately considered and investigated her claim that the beneficiary had been changed, and they appropriately determined that there was no evidence to support the alleged change. Under the circumstances they did not abuse their discretion, and they were correct to pay the benefits to the named beneficiary, Juliana Dickson Garwood. Plaintiff is not entitled to any relief on her claims. I will therefore enter judgment in favor of both defendants.

## D. Attorneys Fees

At trial, both defendants orally moved for an award of attorneys fees. Plaintiff previously sought attorneys fees. 29 U.S.C. § 1132(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The question of whether a non-prevailing party can obtain attorneys fees in an ERISA case is an open question in this circuit. See Leonard v. Southwestern Bell Corp. Disability Income Plan, 408 F.3d 528, 532 n.3 (8th Cir. 2005). It is clear, of course, that defendants are the prevailing parties here, and given that result I do not know if plaintiff intends to renew her request for attorneys fees. In any event, I conclude that under the circumstances of this case, neither party should be awarded attorneys fees.

The award of attorney's fees under ERISA is discretionary. Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan, 874 F.2d 496, 500 (8th Cir.1989). In exercising its discretion, a Court should consider the following factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy any award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to

resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Lawrence v. Westerhaus, 749 F.2d 494, 495 (8th Cir.1984).

In considering these factors, I find that attorneys fees are not warranted. Although I found Rhonda Dickson to be an incredible witness, I do not believe that she acted in bad faith in bringing this case. She lacks the ability to satisfy an award of attorneys fees to the defendants' attorneys, and the defendants themselves are capable of paying their own attorneys fees. I do not believe that an award of attorneys fees against Dickson would deter others – plaintiff's loss of the case is sufficient to meet that goal. The case did not resolve any significant legal issues that will have any effect on other plans or other beneficiaries. Finally, although defendants' case was obviously the stronger of the two, Ms. Dickson had an argument. Given the lack of a policy until well after its effective date and well after Mr. Dickson's death, it was not unreasonable for Ms. Dickson, or her attorney, to believe that perhaps the change of beneficiary form had been lost. Ms. Dickson may have simply been confused, and may have been acting in full good faith in bringing the case. For all of those reasons, I believe that neither side should receive attorneys fees in this case.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [#32] is denied as moot.

**IT IS FURTHER ORDERED** that defendants' motion to apply the abuse of discretion standard [#30] is granted.

**IT IS FURTHER ORDERED** that both defendants' oral motions for attorneys fees are denied.

A separate judgment in accord with this Opinion is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of August, 2005.